## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SPENCER WALLACE** | : | **CIVIL ACTION** |
| *Petitioner* | : | |
| | : | **NO. 18-3509** |
| **v.** | : | |
| | : | |
| **MARK GARMAN,** *et al.* | : | |
| *Respondents* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                              MARCH 23, 2022

## MEMORANDUM OPINION

### INTRODUCTION

Petitioner Spencer Wallace ("Petitioner" or "Wallace"), a Pennsylvania state prisoner initially proceeding *pro se*,[1] filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, in which he asserted numerous claims of ineffective assistance of counsel and denial of due process.  [ECF 1].  In accordance with 28 U.S.C. § 636(b) and Local Rule of Civil Procedure 72.1.IV(c), the petition was referred to United States Magistrate Judge Richard A. Lloret for a *Report and Recommendation* ("R&R").  [ECF 2].  The Magistrate Judge issued an R&R, which recommended that the petition for a writ of *habeas corpus* be denied.  [ECF 22].  Thereafter, Petitioner filed counseled objections to the R&R.  [ECF 29].  This matter is, therefore, ripe for a *de novo* review and a determination of the merits of objections to the R&R.

After a thorough and independent review of the state court record and court filings, and for the reasons stated herein, Petitioner's objections are sustained, *in part*, and overruled, *in part*; the R&R is approved and adopted, *in part*; and the petition for a writ of *habeas corpus* is denied.

---

[1]     Counsel entered an appearance for Petitioner following the issuance of the underlying Report and Recommendation and filed objections to the R&R.

## BACKGROUND

On June 18, 2010, Petitioner was found guilty by a jury of first-degree murder, violations of the Uniform Firearms Act ("VUFA"), and possession of an instrument of crime ("PIC") in connection with the death of Harry Ballard ("Ballard").   The facts underlying Petitioner's conviction were summarized by the Superior Court of Pennsylvania and quoted in the R&R, as follows:

> On July 10, 2008, [Appellant] was trying to track down . . . Ballard, who owed him $50.  He walked a few blocks down from the Queen Lane Apartments to where he believed that Ballard's mother lived.  When he got there[,] he yelled out that he was looking for Ballard's mother.  Stella Lorick, Ballard's aunt, was told by another person that someone was looking for Ballard's mother, so she came out of her house and spoke to [Appellant].  [Appellant] told her that he wanted the money Ballard owed him.  Ms. Lorick told him that if he had an issue with Ballard, he needed to take it up with Ballard and leave "them" alone.  [Appellant] then informed Ms. Lorick that if he did not get his money, he would "bring back drama."
>
> Two days later, on July 12, 2008[,] at about 8:00–8:30pm [*sic*], [Appellant] and a few other men were hanging out behind the Queen Lane Apartments next to a play ground [*sic*] where a few residents were enjoying the summer evening with their children.  Braheim Ballard ("Braheim"), Harry Ballard's brother, drove up, got out of his car and confronted [Appellant] about [Appellant's] confrontation a few days earlier with Ballard's aunt, Stella Lorick.  Braheim yelled at [Appellant] about disrespecting his mother and proceeded to slap [Appellant] in the face.  [Appellant] did not retaliate and the fight was broken up by a Philadelphia Housing Authority Officer who was patrolling the area at that moment.  Braheim then got back in his car and drove off.  The residents who were on the playground with their children witnessed the scene.  Afterwards, they overheard [Appellant] tell his friend Robert Shaheem "Sha" Pinkney to go get his gun in the blue city bag.  [Appellant's] friends attempted to talk him out of handling the situation this way, but he insisted.  Upon receiving the blue city bag containing his gun, he stuck the gun in his waist band [*sic*] and walked around to the front of the Queen Lane Apartments and waited in front of a dry cleaner.

> A few minutes later, Ballard walked up to [Appellant] and attempted to make peace for what happened earlier between [Appellant] and Braheim.  [Appellant] swung his fist at Ballard, missed[,] and the two were separated by [Appellant's] friends.  [Appellant] then walked up to Ballard in the middle of the intersection of Queen Lane and Pulaski Street and shot Ballard once.  Ballard dropped to his knees and then to the ground and began pleading for his life.  [Appellant] then proceeded to turn Ballard over and shoot him four more times, three shots entering Ballard's chest.  He then fled the scene.  Ballard was pronounced dead later that night at a hospital.

*Commonwealth v. Wallace*, 2017 WL 6181826, at *1–2 (Pa. Super. Ct. Dec. 8, 2017) (alterations in original).

Following his conviction, Petitioner was sentenced to life imprisonment on the murder charge, two to seven years on the VUFA charge, and one to five years on the PIC charge, with the sentences to run consecutively.  Petitioner timely filed a direct appeal, challenging comments the prosecutor had made during closing arguments.  The Superior Court of Pennsylvania rejected this challenge and affirmed Petitioner's sentence.

Petitioner timely filed a *pro se* petition for post-conviction relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541, *et seq.*  Following the appointment of counsel and, later, subsequent retention of private counsel, Petitioner filed a second amended PCRA petition, identifying his five claims as follows:

    I.   Trial counsel was ineffective for failing to object to the Court's charge on VUFA and PIC which directed a verdict against his client;

   II.   Trial counsel was ineffective for not objecting to the Court's giving the jury its personal opinion of the evidence as to the Defendant's possession of the firearm with intent to commit murder;

  III.   Trial counsel was ineffective because he failed to object to the Court's charge that highlighted uncontradicted facts because it encouraged the jury to give far more credence to testimony that is uncontradicted based on that fact alone and also focused the

jury's attention on the fact that the Defendant did not testify so as to contradict those facts; and

IV.    Trial counsel was ineffective for failing to object to the Court's instructions which defined reasonable doubt in a manner where the jury was given the choice of eliminating reasonable doubts to which the Petitioner was entitled under the due process clause of the federal constitution.

V.    Trial counsel was ineffective for failing to object to the charge of the court which equated malice with specific intent to kill and by so doing omitted an element of the crime of first degree murder.

(Sec. Am. PCRA Petition, at pp. 3, 8, 9, 13, and 17).  The PCRA court dismissed the petition in a single-page Order that concluded that the "Petition is without merit."

Petitioner appealed the PCRA Court's denial of his PCRA, identifying five issues/claims for appeal in his Superior Court brief as follows:[2]

I.    Was trial counsel ineffective for failing to object to the Court's charge on VUFA and PIC which directed a verdict against his client;

II.    Was trial counsel ineffective for not objecting to the Court giving the jury its personal opinion of the evidence as to the Defendant's possession of the firearm with intent to commit murder;

III.    Was trial counsel ineffective because he failed to object to the Court's charge that highlighted uncontradicted facts because it encouraged the jury to give far more credence to testimony that is uncontradicted based on that fact alone and also focused the jury's attention on the Defendant's failure to testify so as to contradict those facts;

IV.    Was trial counsel ineffective for failing to object to the charge of the Court which equated malice with specific intent to kill and by so doing omitted an element of the crime of first degree murder; and

V.    Was trial counsel ineffective for failing to move for a mistrial after he objected to the testimony from the deceased's mother that her son was a "Straight A Honor Student."

---

[2]    Notably, the PCRA court did not file a Rule 1925(a) opinion.

(Pet. Sup. Ct. Br. at 6). On December 8, 2017, the Superior Court rejected Petitioner's appeal and affirmed the lower court's order of dismissal. *Wallace*, 2017 WL 6181826, at *3–8. Petitioner's appeal to the Supreme Court of Pennsylvania was denied on June 25, 2018.

On August 17, 2018, Petitioner timely filed his *habeas* petition in this case, asserting his five claims as follows:

I. Trial counsel was ineffective for not objecting to the Court's directing a verdict on VUFA and PIC which also directed a verdict against Petitioner as to his intent to murder, depriving him of his right to a jury trial and denying him due process of law;

II. Trial counsel was ineffective for not objecting to the Court's giving the jury her personal opinion of the evidence as to Petitioner's possession of the firearm and intent to commit murder;

III. Trial counsel was ineffective for not objecting to the Court's concluding charge which highlighted uncontradicted facts because it encouraged the jury to give far more credence to testimony that was uncontradicted based on that fact alone and also focused on Petitioner's failure to testify and contract such facts;

IV. Trial counsel ineffectively failed to move for a mistrial after he objected to the testimony from the deceased's mother that her son was a "Straight A" honor student;

V. Trial counsel was ineffective for failing to object to the Court's charge that equated malice with specific intent to kill, thereby omitting an element of first degree murder.

(Habeas Pet., ECF 1, at pp. 3-4). In the R&R, the Magistrate Judge addressed each of these claims, finding that the claims were procedurally defaulted and/or without merit. Petitioner filed counseled objections to the R&R, in which he challenges the Magistrate Judge's conclusions and recommendations as to *only* Claims I, II, and V.

**LEGAL STANDARD**

Where objections to an R&R are filed, a court must conduct a *de novo* review of the contested portions of the R&R, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)

(citing 28 U.S.C. § 636(b)(1)(C)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984).   In conducting its *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge.   28 U.S.C. § 636(b)(1).   Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper.   *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standards for reviewing state court judgments raised in federal *habeas corpus* petitions filed under 28 U.S.C. § 2254.   *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir. 2000).   Post-AEDPA, federal courts must give increased deference to the factual findings and legal determinations of the state courts.   *Id.* at 196.   In accordance with § 2254(d), a federal court may only grant a *habeas corpus* petition if the state court's adjudication of the claim:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).

In order to seek federal *habeas* relief, however, a petitioner must first exhaust the remedies available in state court.   *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State . . . .").   To meet this exhaustion requirement, a petitioner must "fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim."   *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).   For a claim to be exhausted, "'[b]oth the legal theory

and facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court.'" *Tome v. Stickman*, 167 F. App'x 320, 322–23 (3d Cir. 2006) (quoting *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992)).  The petitioner must "fairly present" the federal claim to the state courts before seeking federal *habeas* relief by invoking "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In Pennsylvania, one complete round includes presenting the federal claim through the Superior Court on direct or collateral review. *See Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir. 2004).[3]  The *habeas* petitioner bears the burden of proving exhaustion of all state remedies. *Boyd v. Waymart*, 579 F.3d 330, 367 (3d Cir. 2009).

If a state court has refused or would refuse to review a claim based on a state procedural rule that is independent of the federal question and adequate to support the judgment, the federal court may deny that claim as procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729, 731–32 (1991); *Lark v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 596, 611 (3d Cir. 2011); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004).  The federal court may consider the merits of a procedurally defaulted claim only if "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Holloway v. Horn*, 355 F.3d 707, 715 n.3 (3d Cir. 2004) (quoting *Coleman*, 501 U.S. at 750).

---

[3]     In Pennsylvania, petitioners are not required to present their claims to the state's highest court on discretionary review (*i.e.*, the Supreme Court of Pennsylvania) in order to satisfy the exhaustion requirement. *Lambert*, 387 F.3d at 233–34.  Thus, for exhaustion purposes, the Superior Court is the highest court to which Petitioner was required to seek review.

**DISCUSSION**

Petitioner objects to the Magistrate Judge's conclusions and recommendations with respect to Claims I, II, and V.  This Court will address each of the claims and concomitant objections.

### Claims I and II for Ineffective Assistance of Counsel

Petitioner first objects to the Magistrate Judge's conclusion that Claims I and II were unexhausted and, thus, procedurally defaulted.  As set forth above, Petitioner asserts in Claims I and II that his trial counsel was ineffective for failing to object to the trial court's jury instructions and commentaries on the VUFA and PIC charges that Petitioner contends effectively directed a verdict against him on these charges and on the first-degree murder charge.  The portion of the jury instruction at issue (as set forth in Petitioner's briefing and the Superior Court opinion) provided, as follows:

> Finally, I would like to define for you the crime of possessing an instrument of a crime [PIC].
>
> In order to find the defendant guilty of this offense, you have to find, first of all, that the defendant possessed a firearm. To possess an item, the defendant must have the power to control it and the intent to control it.
>
> Secondly, that the firearm was an instrument of crime. An instrument of a crime is anything that is used for criminal purposes and possessed by a defendant at the time of the alleged offense under circumstances that are not manifestly appropriate for any lawful uses it might have.
>
> And in this case[,] the facts show that a firearm was used to commit a murder, so the first two elements—the second element, that the firearm was an instrument of a crime, has been proven by the facts of this case that are not contradicted; and that the defendant possessed the firearm with the intent to attempt or commit a crime with it—in this case[,] the crime of murder.
>
> So what you have to decide is whether or not the defendant possessed a firearm.

*See Wallace*, 2017 WL 6181826, at *3–4.

### *Exhaustion of Claim I—Waiver Issue*

The Magistrate Judge concluded that Claim I, which is premised on Petitioner's challenge to the above instruction, was unexhausted and procedurally defaulted. In reaching this conclusion, the Magistrate Judge relied on footnote seven in the Superior Court's decision. (*See* R&R, ECF 22, at p. 13). This footnote, which immediately followed the Superior Court's merits analysis of Petitioner's "first and second issues together,"[4] provided:

> Appellant does not develop his argument concerning why trial counsel was ineffective for failing to object to the trial court's VUFA charge. Accordingly, we deem this issue waived. *See Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa. Super. 2016) ("[A]rguments which are not appropriately developed are waived. Thus, issues raised in a Brief's Statement of Questions Involved but not developed in the Brief's argument section will be deemed waived.") (citations omitted). Nevertheless, even if not waived, we would determine that the trial court, again, appropriately clarified the issues for the jury by narrowing its focus to resolving the contested matter of whether Appellant had a firearm.

*Commonwealth v. Wallace*, 2017 WL 6181826, at *4 n.7 (Pa. Super. Ct. Dec. 8, 2017). Relying on this footnote, the Magistrate Judge concluded that Claim I, *in its entirety*, had been deemed "waived" by the Superior Court and, thus, procedurally defaulted for purposes of *habeas* review. (R&R, ECF 22, at p. 13). As noted by the Magistrate Judge, it is well-settled that when a state court rejects a claim on an independent and adequate state law ground, such as waiver, the state court decision is not subject to federal court review. *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 389 n.4 (3d Cir. 2020); *Leake v. Dillman*, 594 F. App'x 756, 759 (3d Cir. 2014).

---

[4]    It is clear from the Superior Court's opinion that the Superior Court's reference to the "first and second issues" corresponds to the same first and second issues raised in Petitioner's underlying *habeas* petition. *See Wallace*, 2017 WL 6181826, at *2.

Though acknowledging that Claim I, as it relates to the VUFA instruction, was deemed "waived" by the Superior Court—and, thus, not reviewable here—Petitioner correctly argues that the Magistrate Judge erroneously extended this waiver to the portion of Claim I directed at the PIC instruction.  In its opinion, the Superior Court clearly addressed the merits of Claim I with respect to the PIC instruction.  *See Wallace*, 2017 WL 6181826, at *3–4.  Further, the cited footnote is expressly limited to the portion of Claim I directed at the "VUFA charge."  *Id.* at *5 n.7.  Nowhere in its opinion did the Superior Court state, or in any way suggest, that the instructional error contained within the PIC charge was waived by Petitioner.  To the contrary, the Superior Court spent fourteen paragraphs discussing the propriety of the PIC instruction and the trial judge's comments therein.  *See Wallace*, 2017 WL 6181826 at *3–6.  Accordingly, though this Court agrees with the Magistrate Judge that Petitioner's claim with respect to the VUFA instruction is procedurally defaulted, this Court disagrees with respect to the portion of Claim I directed to the PIC instruction.  Thus, this claim was not procedurally defaulted on account of waiver.[5]

### *Exhaustion of Claims I and II—Fairly Presented Issue*

Petitioner next objects to the Magistrate Judge's finding that Claims I and II were unexhausted and procedurally defaulted on account of Petitioner's failure to "fairly present" them to the state court.  Specifically, in the R&R, the Magistrate Judge concluded that Petitioner had failed to "fairly present" his current due process challenges to the jury instructions in state court.  (R&R, ECF 22, at p. 13).  Respectfully, this Court disagrees with the Magistrate Judge's conclusion.

---

[5]     Notably, in their response to the *habeas* petition, Respondents argued only that these claims, as they related to the VUFA charge, were procedurally defaulted and acknowledged that the claims as to the PIC charge were not defaulted.  (*See* Resp. Br., ECF 10, at pp. 8–9).

To exhaust state court remedies, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A claim has been exhausted when it has been "fairly presented" to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). This means that the federal *habeas* claim "must be the substantial equivalent of that presented to the state courts." *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The United States Court of Appeals for the Third Circuit, (the "Third Circuit")  has interpreted "fairly presented" to mean that a petitioner must have presented both the factual and legal substance of the claims in the state court's highest tribunal. *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012). A petitioner must do so "in a manner that puts them on notice that a federal claim is being asserted." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). The allegations and supporting evidence must offer the state courts "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard*, 404 U.S. at 276–77). To satisfy this requirement, "the petitioner need not have cited 'book and verse' of the federal constitution." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

Because Pennsylvania law prevents a defendant from raising an ineffective assistance of counsel claim on direct appeal, *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002), a defendant exhausts an ineffective assistance of counsel claim by raising it in the first petition for collateral relief under the PCRA. *See Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236–37 (3d Cir. 2017). Here, Petitioner did not raise any challenges to the jury instructions during his direct appeal. Therefore, he was procedurally required to assert any such challenges through the lens of an ineffective assistance of counsel claim on post-conviction review. *See Tyson v.*

*Superintendent Houtzdale SCI*, 976 F.3d 382, 390 (3d Cir. 2020).  Petitioner did so in his PCRA proceedings by asserting that his trial counsel was ineffective for failing to object to the trial judge's jury instructions on the PIC charge, which effectively directed a verdict against him. Having raised the same ineffective assistance of counsel claims in his PCRA proceedings that he asserts here, Petitioner has exhausted these claims.  *See Tyson*, 976 F.3d at 390 (rejecting argument that petitioner failed to exhaust challenges to jury instructions where he asserted the claims for the first time as ineffective assistance of counsel claims during the PCRA proceedings).

Moreover, numerous courts have held that a claim is exhausted "if the State's highest court expressly addresses the claim, whether or not it was fairly presented."  *Casey v. Moore*, 386 F.3d 896, 916 n.18 (9th Cir. 2004) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *see also, e.g.*, *Walton v. Caspari*, 916 F.2d 1352, 1356 (8th Cir. 1990) ("A habeas [p]etitioner need not actually have raised a claim in a state petition in order to satisfy the exhaustion [requirement], if a state court with the authority to make a final adjudication actually undertook to decide the claim on its merits in the petitioner's case."); *Castille*, 489 U.S. at 351 (holding that a claim has been exhausted "where the State has actually passed upon the claim"); *Orr v. Orr*, 440 U.S. 268, 274–75 (1979) (citing "elementary rule that it is irrelevant to inquire . . . when a Federal question was raised in a court below when it appears that such question was actually considered and decided"); *Moore v. DiGuglielmo*, 489 F. App'x. 618, 623 (3d Cir. 2012) (citing, *inter alia*, *Walton v. Caspari*, 916 F.2d 1352, 1356 (8th Cir. 1990) ("A habeas [p]etitioner need not actually have raised a claim in a state petition in order to satisfy the exhaustion [requirement], if a state court with the authority to make a final adjudication actually undertook to decide the claim on its merits in petitioner's case.")).  Here, it is clear that the Superior Court addressed the merits of Petitioner's ineffective assistance claims contained within Claims I and II.  As such, these claims were exhausted.

It is also clear from Petitioner's filings with the PCRA courts that Claims I and II raised the same federal and constitutional issues that he is raising in his *habeas* petition. As discussed above, Claims I and II were couched, as they were required to be, as claims for ineffective assistance of counsel—claims recognized by all state courts as raising federal and constitutional issues. Indeed, in analyzing these ineffective assistance of counsel claims, the Superior Court applied the state law equivalent of the federal standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Wallace*, 2017 WL 6181826, at *3 (quoting standard for ineffective assistance of counsel claim set forth in *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005), that is the equivalent of that in *Strickland*). Having been presented and reviewed under the same legal standard as required in this Court, Petitioner's ineffective assistance of counsel claims at Claims I and II have been exhausted.

It is also clear from Petitioner's PCRA filings that his arguments underlying Claims I and II were premised, at least in part, on federal and constitutional underpinnings. In support of these claims, which specifically asserted that the trial court—through its jury instructions—had wrongfully directed a verdict against him, Petitioner cited to several United States Supreme Court decisions for the proposition that "federal courts have long condemned directed verdicts." (Sup. Ct. Br. at p.10). For example, Petitioner cited to *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977), in which the Court held that "a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelming the evidence may point in that direction." *Id.* at 572–73. He also cited *Carpenters v. United States*, 330 U.S 395, 408 (1947), and *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993), both of which expressly held that a trial judge may not direct a verdict against a criminal defendant, no matter how overwhelming the evidence. Petitioner's specific reliance on these federal cases

was sufficient to put the state courts on notice that he was raising federal and/or constitutional claims.  Accordingly, this Court finds that Claims I and II were exhausted.

### *Merits of Claims I and II for Ineffective Assistance of Counsel*

Having found that Claims I and II were exhausted and, thus, not procedurally defaulted, this Court next turns to the merits of these claims.  As did the Superior Court, this Court will address these claims together, as Petitioner makes the same arguments for each.  In these claims, Petitioner asserts that his trial counsel was ineffective for failing to object to the trial judge's instruction and comments to the jury regarding the PIC charge, which Petitioner contends amounted to a directed verdict against him.  On *habeas* review, this Court must review the state court's decision with respect to these claims under the deferential standard of AEDPA.

As noted, AEDPA amended the standards for reviewing state court judgments raised in federal *habeas corpus* petitions filed under 28 U.S.C. § 2254, increasing the deference federal courts must give to the factual findings and legal determinations of the state courts.  *Werts*, 228 F.3d at 196.  In accordance with § 2254(d), a *habeas corpus* petition may only be granted if the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  To establish that the state court decision was "contrary to" federal law, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome."  *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, the federal court may only find the state court decision

to be an "unreasonable application" of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id*. at 890. Further, factual determinations made by the state court are "presumed to be correct." 28 U.S.C. § 2254(e)(1). The *habeas* petitioner, however, may rebut this presumption with "clear and convincing evidence" of the state court's error. *Id*. Consequently, a *habeas* petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597–98 (1st Cir. 2001). As the Supreme Court has observed, this standard is "difficult to meet and highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Claims I and II are each premised upon the alleged ineffective assistance of Petitioner's trial counsel for failing to object to a portion of the jury instructions. The "clearly established federal law" applicable to ineffective assistance of counsel claims on *habeas* review is the familiar two-pronged inquiry articulated by the Supreme Court in *Strickland*. *Williams v. Taylor*, 529 U.S. 362, 363 (2000). To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish that counsel was deficient, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. In evaluating counsel's performance, the reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

The Court has defined prejudice as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992). To meet this second prong, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* It follows that counsel cannot be ineffective for failing to pursue meritless claims or objections. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999); *Boston v. Mooney*, 2015 WL 6674530, at *12 (E.D. Pa. Jan. 9, 2015).

Where the state court has denied an ineffectiveness claim on its merits, as is the case here, a *habeas* petitioner must show the state court's decision was "objectively unreasonable." *Renico v. Lett*, 559 U.S. 766, 773 (2010); *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating that review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002).

Petitioner advances no argument, in either his objections or *habeas* petition, that the Superior Court decision affirming the denial of PCRA relief is contrary to extant United States Supreme Court precedent, or that the test applied by the state court is inconsistent with the federal test established in *Strickland*. In its ruling affirming the dismissal of Petitioner's PCRA petition, the Superior Court correctly considered and applied the governing test in Pennsylvania for

ineffective assistance of counsel claims announced in *Commonwealth v. Pierce,* 527 A.2d 973 (Pa. 1987) ("the *Pierce* test").[6]   The Third Circuit has determined that the *Pierce* test conforms to established federal law and is "not contrary to the *Strickland* test."   *Henderson v. DiGugliemo*, 138 F. App'x 463, 468 (3d Cir. 2005); *Werts*, 228 F.3d at 203 (recognizing that the *Pierce* test as materially identical to the *Strickland* test).   Hence, the Superior Court's decision is not "contrary to" the test established in *Strickland*.

The dispositive question with respect to these ineffective assistance of counsel claims, therefore, is whether the Superior Court's decision reflects an unreasonable application of the *Strickland* test.   To carry his burden, Petitioner must demonstrate that the state court's decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under [*Strickland*]."   *Werts*, 228 F.3d at 197.

In determining whether Petitioner's trial counsel was ineffective for failing to object to the jury instructions at issue, the Superior Court assessed the jury charge "as a whole" and concluded that there was no reasonable likelihood that the jury applied the instruction inappropriately. *Wallace*, 2017 WL 6181826, at *5–6.   Because there was no reasonable likelihood that the jury misapplied the instruction, the Superior Court concluded that trial counsel was not ineffective for not objecting to the instruction.   *Id.*   In the R&R, the Magistrate Judge thoroughly addressed the Superior Court's decision as to the merits of Claims I and II and concluded that it was not an unreasonable application of federal law as determined by the Supreme Court.   (R&R, ECF 22, at pp. 23–24).   For the reasons that follow, this Court agrees with and adopts the R&R with respect to this conclusion.

---

[6]      In its opinion, the Superior Court quoted the Supreme Court of Pennsylvania's decision in *Commonwealth v. Robinson*, 877 A.2d 433 (Pa. 2005), for the requirements of an ineffective assistance claim, *Wallace*, 2017 WL 6181826, at *3.   In *Robinson*, the Supreme Court of Pennsylvania relied on its previous decision in *Pierce*.   877 A.3d at 439.

When a *habeas* petitioner claims the jury instructions violated due process, as Petitioner does here, the federal courts "have an independent duty to ascertain how a reasonable jury would have interpreted the instructions as issue." *Smith v. Horn*, 120 F.3d 400, 413 (3d Cir. 1997). The Third Circuit outlined the applicable process and standard as follows:

> Our analysis of jury instructions claimed to impair a constitutional right "must focus initially on the specific language challenged." *Francis v. Franklin*, 471 U.S. 307, 315, 105 S. Ct. 1965, 1971, 85 L.Ed.2d 344 (1985); *see also Rock v. Zimmerman*, 959 F.2d 1237, 1246 (3d Cir. 1992) (en banc). The allegedly constitutionally infirm language must be considered in the context of the charge as a whole. *See Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Flamer v. Delaware*, 68 F.3d 736, 752 (3d Cir. 1995); *Kontakis v. Beyer*, 19 F.3d 110, 115–16 (3d Cir. 1994). The proper inquiry is "'whether there is a *reasonable likelihood* that the jury has applied the challenged instructions in a way' that violates the Constitution." *Estelle*, 502 U.S. at 72, 112 S. Ct. at 482 (quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S. Ct. 1190, 1198, 108 L.Ed.2d 316 (1990)) (emphasis added); *see also Victor v. Nebraska*, 511 U.S. 1, 6, 114 S. Ct. 1239, 1243, 127 L.Ed.2d 583 (1994); *Flamer*, 68 F.3d at 752.

*Smith v. Horn*, 120 F.3d 400, 411 (3d Cir. 1997); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974) (holding that a jury instruction should not be "judged in artificial isolation, but must be viewed in the context of the overall charge"). Notably, the Superior Court followed this framework by evaluating the jury instruction "as a whole" and concluding that there was no reasonable likelihood that the jury misapplied the instruction.

Turning to the challenged portion of the instruction, this Court agrees with Petitioner that this portion of the instruction, when viewed ***in isolation***, essentially advised the jury that the uncontradicted facts proved that "the defendant [Petitioner] possessed the firearm with the intent to commit a crime with it—in this case the crime of murder." In doing so, this portion of the instruction, in isolation, relieved the Commonwealth of its burden of proving every element of the

alleged crimes beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358, 364 (1970); *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979).  Specifically, this portion of the instruction, in isolation, relieved the Commonwealth of its burden to prove that Petitioner possessed the firearm (which Petitioner contested at trial) and had the intent to commit murder, elements the Commonwealth was required to prove beyond a reasonable doubt.  It bears repeating:  this portion of the instruction—on its face, ***in isolation***, and by its express terms—advised the jury that Petitioner possessed a firearm with the intent to commit murder.

However, this Court's review of the instruction at issue does not end there.  As correctly recognized by the Superior Court, the Magistrate Judge, and Petitioner in his briefing, the challenged language must be reviewed in the context of the jury instruction "as a whole."  *Francis*, 471 U.S. at 315.  In its decision, the Superior Court did just that.  *See Wallace*, 2017 WL 6181826, at *5–7.  The Superior Court set forth at length the portions of the jury instruction that explained: (1) the jury's role as the "sole judges of the facts;" (2) that the jury should not rely on the judge's "supposition;" (3) that the jury was "not bound by [the judge's] recollection;" and (4) that the jury was not limited to consideration of the "evidence that [the judge] or the attorneys brought to your attention . . . ."  *Id.* at *5.  The Superior Court also noted that immediately following the challenged portion of the instruction, the trial judge instructed:  "So what you have to decide is whether or not [Petitioner] possessed a firearm."  *Id.* at *4.  In addition, the Superior Court set forth the entirety of the trial judge's jury instruction with regard to first-degree murder and the specific intent to kill. *Id.* at *7.  The relevant portion of the instruction provided:

> First-degree murder is a murder in which the perpetrator has the specific intent to kill.  In order to prove [Appellant] guilty of first-degree murder, the Commonwealth has to prove three elements: One, that the victim is dead. And there's no question about that.
>
> Two, that [Appellant] killed the victim.

> And, three, that [Appellant] killed the victim with the specific
> intent to kill and with malice.

*Id.* at *7.  This portion of the instruction, specifically, clearly, and correctly, placed the burden on the Commonwealth to prove that the Petitioner killed the victim with the specific intent to kill. Taking the jury instructions "as a whole," the Superior Court concluded that the trial court's instructions "'clearly, adequately, and accurately' presented the law to the jury for its deliberations."  *Id.* at *7 (citations omitted).

While this Court finds that a reasonable jurist could disagree with the Superior Court's decision, that is not the applicable standard on *habeas* review.[7]  Rather, this Court must determine whether no reasonable jurist could agree with the Superior Court's decision.  In light of this Court's review of the jury instruction as a whole—particularly those portions that correctly outlined the jury's role and the Commonwealth's burden with respect to each element of the charged crimes, and, in particular, first-degree murder—this Court finds that the Superior Court's decision with respect to the jury instructions was not an unreasonable application of federal law.  Accordingly, Petitioner's objections to the Magistrate Judge's recommendation as to the merits of Claims I and II are overruled.

In addition, though not addressed by the Superior Court, this Court finds that Petitioner has not met, nor can he meet, the prejudice prong of *Strickland*.  To demonstrate prejudice under the *Strickland* analysis, Petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

---

[7]     As clarified by the Third Circuit, "whether we 'conclude[] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a higher bar."  *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017).

*Strickland*, 466 U.S. at 694.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.  Under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington*, 562 U.S. at 112.  In the context of an unobjected-to and faulty jury instruction, the Third Circuit has instructed that a court must "look to the record to determine whether the instruction interfered with the jury's assessment of the evidence to the extent that, but for the incorrect statements of law, there is a substantial likelihood that a different verdict would have been reached."  *Tyson*, 976 F.3d at 397.  In assessing prejudice, the court must also consider the strength of the evidence presented against the defendant at trial.  *See United States v. Calhoun*, 600 F. App'x 842, 844 (3d Cir. 2015) (citing *Albrecht v. Horn*, 485 F.3d 103, 128–29 (3d Cir. 2007)).

As set forth above, though the challenged portion of the jury instruction, in isolation, inappropriately appeared to relieve the Commonwealth of its burden to prove each of the elements of the charged crimes, the remainder of the instruction correctly placed that burden on the Commonwealth.  When viewed as a whole, this Court cannot conclude that the "instruction interfered with the jury's assessment of the evidence to the extent that . . . there is a substantial likelihood that a different verdict would have been reached."  *Tyson*, 976 F.3d at 397.  This conclusion is supported by the Third Circuit's similar conclusion in *Mathias*, 876 F.3d 462 (3d Cir. 2017).  There, the petitioner challenged a jury instruction that "made inconsistent statements regarding accomplice liability, with some portions properly instructing jurors to find shared intent and others incorrectly implying the principal's intent to kill was grounds for convicting the accomplice."  *Tyson*, 976 F.3d 382, 398 (3d Cir. 2020) (describing the challenged jury instruction in *Mathias*).  The *Mathias* Court concluded that the Superior Court's decision that the petitioner

suffered no prejudice in light of the "accurate portions of the trial court's first-degree murder instruction" was not an unreasonable conclusion under *Strickland*. *Mathias*, 876 F.3d at 479.

As in *Mathias*, the particular jury instruction at issue here (as described above) was "less than precise" and included inconsistent statements with respect to the Commonwealth's burden to prove each of the elements of the charged crimes. *Id.* at 478–79. The majority of the instruction with respect to the jury's role, the requisite elements of the charged crimes, and the Commonwealth's burden, however, was clear, accurate, and correct. Under these circumstances, this Court cannot conclude that "there is a substantial likelihood that a different verdict would have been reached." *Tyson*, 976 F.3d at 397.[8]

In addition, in this case, the evidence of Petitioner's guilt on all of the charges was overwhelming. Four eyewitnesses identified Petitioner as the individual who repeatedly shot the victim. While Petitioner attempted to challenge the credibility of these four eyewitnesses by pointing to minor, internal inconsistencies, those purported inconsistencies do not call into question these four eyewitnesses' consistent testimony that Petitioner was the shooter. In light of this overwhelming evidence, Petitioner has not shown a reasonable probability that the outcome would have been different, as is required under *Strickland*. Accordingly, the objections as to Claims I and II are overruled, and said claims are denied.

### *Claim V for Ineffective Assistance of Counsel*

Petitioner also objects to the Magistrate Judge's recommendation with respect to Claim V. In Claim V, Petitioner asserts that his trial counsel was ineffective for failing to object to the trial court's jury instruction that purportedly merged the elements of specific intent to kill and malice,

---

[8]      While this case is very similar to *Mathias*, it is very much different from *Tyson*, 976 F.3d 382 (3d Cir. 2020). The jury instruction in *Tyson* was "consistently incorrect" and "no portion of the instruction articulated the correct *mens rea*." *Id.* at 398. In contrast, the instruction here included portions that were correct with respect to the elements of the crimes and the Government's burden.

thereby relieving the Government of its burden to prove all of the requisite elements of the charged crimes.   In the R&R, the Magistrate Judge found this claim non-cognizable on *habeas* and, otherwise, without merit.  Petitioner objects to both of these findings.

In finding this claim non-cognizable, the Magistrate Judge interpreted the claim as a challenge on state law grounds only.  Such state law claims are not cognizable on *habeas*.  *Estelle*, 502 U.S. at 67 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.").  Reading both Petitioner's PCRA filings and *habeas* petition liberally, however, it appears that Petitioner has, in fact, asserted a cognizable federal challenge to the jury instruction at issue.  In both his state court and *habeas* briefs, Petitioner supported his challenge to this aspect of the jury instruction with citations to and quotations from various federal cases.  This federal case law addressed due process requirements in the context of jury instructions.  Accordingly, this Court finds that Petitioner has asserted a cognizable *habeas* claim in Claim V.

Notwithstanding, this Court agrees with the Superior Court and the Magistrate Judge that this claim lacks merit.  As clarified in his objections, Petitioner essentially argues that his trial counsel was ineffective for failing to object to the instruction on malice because the instruction equated malice with specific intent to kill without including the following qualification/exception provided in the Pennsylvania Standard Jury Instructions:

> A person has the specific intent to kill if he or she has a fully formed intent to kill and is conscious of his or her own intention. As my earlier definition of malice indicates, a killing by a person who has the specific intent to kill is a killing with malice **provided that it is also without circumstances indicating it was done in the heat of passion on sudden provocation**.

(Pet. Obj., ECF 29, at pp. 54–55).  Here, trial counsel did not present a defense based on the homicide occurring "in the heat of passion."  Rather, trial counsel's defense strategy was based solely on his challenge to the credibility of the evidence showing that Petitioner was the shooter,

*i.e.*, the four eyewitnesses to the murder. Under these circumstances, which are nowhere addressed by Petitioner in any of his filings, trial counsel cannot be deemed to have been ineffective for failing to object to the absence of the inclusion of a "heat of passion" exception to the malice instruction. In addition, in light of the overwhelming evidence of guilt cited above, Petitioner has not shown a reasonable probability that the outcome would have been different, as is required under *Strickland*. Accordingly, the objections as to Claim V are overruled and Claim V is denied.

**CONCLUSION**

For the reasons stated herein, Petitioner's objections to the Report and Recommendation are sustained, *in part,* and denied, *in part*, and the petition for a writ of *habeas corpus* is denied. However, because reasonable jurists could debate this Court's disposition of Petitioner's Claims I and II, a certificate of appealability is granted. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.